No. 31.—RICHARD BASSETT and others, plaintiffs in error, *vs.* THE GOVERNOR, use, &c. &c. defendants in error.

[1.] It is the duty of the Collector of Taxes to apply for a commission within twenty days after his election, but there is no law requiring the Governor to issue it immediately; and if the Collector does apply for his commission within time, and gives bond within ten days after he is notified that his commission has arrived, such bond is a valid statutory bond: *Held,* also, that the commission must issue soon enough to allow the Collector ten days, before the first day of July, within which to qualify.

[2.] It is not compulsory on the Justices of the Inferior Court, to take bond and security of the Tax Collector, under the Act of 1821, for the collection and payment of the *County Taxes,* but discretionary. When required, it is the duty of the Collector to give it, and upon failure to collect and pay over the County taxes, the Justices of the Inferior Court may issue execution for the same against him and his sureties on such bond; and whether such bond be taken or not, the sureties on his general bond are liable to make good his default in the collection and payment of the *County taxes;* and the Justices of the Inferior Court may issue execution against them for the same, in the name of the Governor, for their use.

[3.] Such execution may issue at any time, and is properly returnable before the Justices of the Inferior Court, they being authorized to act in this regard as individuals, and not as a Court.

[4.] The execution issues in such cases for the balance of the amount of the taxes assessed for County purposes, and not paid over on the first Monday in December : and it is not necessary that the execution be based on any order or judgment of the Justices; yet, it is expedient that there be such an order passed.

[5.] When the Inferior Court had authorized the Collector to receive County orders in payment of County taxes, and execution has issued against him for taxes unpaid, he is entitled to be credited thereon, for such orders only as he may have turned over to the Court, or tendered to them, or which he brings into Court and there tenders.

[6.] Citizens of a County, held to be competent as Jurors to try an issue made on an execution issued against the Tax Collector and his sureties for the County Taxes, not collected and paid over according to law.

Illegality, in Bibb Superior Court. Tried before Judge STARKE, July Term, 1851.

On the first day of January, 1849, Richard Bassett was elected Tax Collector in and for the County of Bibb, for that year.

On the fifth day of June following, he executed, in the presence of three of the Justices of the Inferior Court, his bond, as such Collector.

At the January Term, 1850, of said Court, the Justices thereof passed an order authorizing a *fi. fa.* to issue against Bassett and his securities, for the sum of $5024 57 cents, as so much County Tax collected by him, for the year 1849.

On the 28th day of January, a *fi. fa.* was issued accordingly, by the Clerk of said Court, returnable to the March Term following.

To the *fi. fa.* Bassett and his securities filed an affidavit of illegality, upon the following, among other grounds:

1. That said bond was not executed and accepted at the time, and within the time, and in accordance with the provisions, and in the manner specified and required by law, in cases of Tax Collector's bond.

2. That the office of Tax Collector of the County of Bibb was vacant, under the provisions of the Statute in regard to such cases made and provided, at the time said bond purports to have been made and executed.

3. That the bond on which this *fi. fa.* was issued, not being good, as claimed in the preceding grounds, as a statutory bond, nor in fact, good and binding upon the defendants at all, or if at all, only as a voluntary bond, the Inferior Court had not the power summarily to issue a *fi. fa.* on such bond, against Bassett and his securities; and that the order passed by the said Court, authorizing the *fi. fa.* to issue, was unconstitutional and void, because no notice was given to Bassett and his securities, and they were deprived of a trial by Jury.

4. That the whole amount claimed in said *fi. fa.* was the extraordinary or County tax; and that the bond given by Bassett was executed to the Governor of the State, for the collection of the State Tax, and the performance of his duties as Tax Collector; and that no bond was ever given by Bassett for the collection of the extraordinary or County tax.

5. That the *fi. fa.* should have issued in the name of the

Justices of the Inferior Court, for the use of the County of Bibb, and not in the name of the Governor, &c.

7. That a part of the amount of said *fi. fa.* is for taxes never collected by Bassett, as is required by law, before issuing such an execution.

Counsel for the plaintiffs traversed the grounds taken on the affidavit of illegality, and the cause was transferred to the Appeal Docket in the Superior Court of Bibb County, by consent.

The cause came on to be tried on the appeal, at July Term, 1851, of Bibb Superior Court, when counsel for the defendants objected to the array of Jurors, on the ground that, being citizens of Bibb County, they were interested in the issue. The Court overruled the objection, and defendant, by his counsel, excepted. Counsel for defendant objected to the issue being tried, for want of jurisdiction in the Inferior Court, the *fi. fa.* having been made returnable to that Court, when it should have been made returnable to the Superior Court; and also, because the *fi. fa.* was founded on an order, purporting to have been passed at the January Term, 1850, of said Inferior Court, when, in fact, there was no such term of said Court.

The Court overruled the objections, and defendant's counsel excepted.

The fourth and fifth grounds taken in the affidavit of illegality, being legal questions, were, after argument, overruled by the Court, and counsel for defendants excepted.

When the *fi. fa.* was tendered in evidence, counsel for defendants objected, on the ground that it did not follow the judgment, and the objection was overruled by the Court, and defendants excepted.

In the progress of the trial, the defendants proved that a portion of the taxes for which the *fi. fa.* was issued, had not been collected and was not in the hands of Bassett at the time of issuing the execution, and thereupon they moved to quash the *fi. fa.* The motion was overruled by the Court, and counsel for defendants excepted.

After the testimony was closed, counsel for defendants moved

the Court to withdraw the cause from the Jury, because the Jury was not the one stricken.

The Court overruled the motion, and counsel for defendants excepted.

The Court charged the Jury, that if Bassett had collected the County taxes in money, or had "orders" of the kind the Inferior Court had agreed to receive, enough to pay the balance due for County taxes, in either case he was entitled to no credit on the *fi. fa.* except for such an amount of County orders as he had actually paid over or tendered.

The Court also charged the Jury, that the bond of Bassett and his securities was a good and statutory bond.

To which rulings of the Court, counsel for defendants excepted.

And upon these several exceptions have assigned error.

RUTHERFORD, HINES and HALL, for plaintiffs in error.

STUBBS & LESTER and WHITTLE, for defendants.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] The bond of the *Collector* is a good statutory bond. The Act of 13*th December*, 1809, does not embrace *Collectors.* Whether intentionally or inadvertently, they are omitted. It applies only to *Clerks of the Superior, Inferior and Courts of Ordinary, Sheriffs, Coroners and County Surveyors*, and requires them to make application to the Governor for their commissions within *twenty days* after their election. *Cobb's N. Dig.* 200. By the *Act of* 1811, *Collectors* and other County officers, are required to take their oaths of office and give bond within *ten days after they are notified of the arrival of their commissions. Cobb's N. D.* 202. And by the Act of 1823, *Collectors* and other officers are required to apply for and obtain their commissions and certificates, and qualify within the time and manner theretofore pointed out by law; and if they do not, their offices are to be considered vacant, and they are declared to be

Bassett *et al. vs.* The Governor, use, &c.

ineligible.   *Cobb's N. D.* 209.   I do not doubt but that the Act of 1823, by a fair construction, may be considered as extending the provisions of the Act of 1809 to *Collectors,* and therefore, it is the duty of the *Tax Collector* to apply to the Governor for his commission within *twenty days* from his election ; and when the commission is sent forward to the *Inferior Court,* to qualify within *ten days* from the time of his receiving notice of its arrival.   And if it is *not* applied for within the time, or if it is, and it is sent out by the Governor, and he is duly notified of its arrival and he does *not* qualify within the ten days, his office will be declared vacant and he be ineligible,  unless his failure to do so was occasioned by the act of others, over which he could have no control.   The position taken against this bond is, that it was not taken within thirty days from the election of the officer, giving him twenty days to apply for his commission, and ten days to qualify after it issues.   A bond executed after thirty days, it is said, is not taken according to the Statute, and therefore the office is vacant and the bond void ; and inasmuch as this officer was elected in *January* and this bond bears date in *June,* it is void as a Statutory bond.   Without yielding our assent to the conclusions, in their full extent, to which the counsel come, or stating wherein they are properly subject to modification, the necessities of this case require us to say only, that it does not appear from this record, but that the application for the commission was made within twenty days, and the officer gave his bond within ten days after it was sent forward, and he had notice of its arrival.   Certain things the law requires the Collector to do : he must apply to the Governor for his commission within twenty days, and when the commission issues and he has notice, he must qualify within ten days.   These are burdens put upon him ; and he must do these things at his peril.   As to the first— applying for his commission—it does not appear to us that he failed to apply.   We must presume that he did apply. As to the second, the obligation to qualify *does not arise until the commission issues.*   We know of no law which requires the Governor to issue the commission as a matter of course, as soon as application is made for it.   Although it is to be

considered, that in accordance with the policy of these Statutes, looking to the prompt qualification of County officers, and through that to the efficiency of the public service, he will issue the commission so soon as applied for; yet, there is no law which requires him to do so. He is required, by the Act of 1810, to commission Collectors and Receivers, but no time is specified within which it shall be done. *Cobb's N. Dig.* 200. If there is no reason operating upon the mind of the Governor for deferring it, he will commission them—that is, he will send out the commission, with a *dedimus* to the *Justices* of the *Inferior Court,* who will deliver it, upon the officer's giving bond. And no doubt, the intent of the law is, that he will do so without delay, generally. But if there are reasons which the Governor esteems of sufficient weight for postponing it, he is not prohibited by law, from doing so; provided, always, that when issued at all, he must issue it so early as to give the Collector the allotted time to qualify, before the first of July; at which time the law requires him to proceed with the collection of the taxes. *Cobb's N. D.* 1073. Such is the usage of the Executive office, grown up under able men, upon a fair consideration of the Statutes. The Act of 1804 requires the Governor to take bond of the Collectors, and transmit to the Inferior Court a *dedimus* for its execution. The *dedimus* is usually accompanied with a commission; but this Act fixes no time within which it shall be done. By the 5th section of the same Act, the Collectors and Receivers are made responsible to the *Executive* Department, and are amenable to such rules, in conducting the duties of their offices, as the Governor may think necessary and proper. *Cobb's N. D.* 1046. Wherein it would seem, that discretion, of course limited by the positive provisions of law, is given to the Governor, as to the general supervision of, and control over these officers. We have had occasion to say in other cases, and we shall say in this case, that the collection of the taxes is left by our laws, to be enforced mainly by the *Executive.* For these reasons we affirm the judgment of the Court below, deciding that this is a good statutory bond. If good as a statutory bond, the question made as to the right of

Bassett *et al. vs.* The Governor, use, &c.

trial by Jury, upon the assumption that this proceeding was on a voluntary bond, need not be considered.

[2.] The next ground of error which I notice, is the ruling of the Court, that the sureties of the Collector are liable upon this bond for a failure to pay over the *County taxes.* It was made payable to the Governor, and is the general bond given by the officer for the faithful performance of his duties as *Tax Collector.* The counsel for the plaintiffs in error, hold that it is intended to secure the payment of the State tax alone, and that the sureties are not bound to make good a defalcation of their principal, therefore, in failing to pay over the taxes raised for County purposes. They insist that by law, the *Justices of the Inferior Court* are required to demand, and the Collector is required to give, a separate bond, to secure the faithful execution of his duties, so far as the collection and settlement of the County taxes are concerned; and inasmuch as this is so, the bond to the Governor is only to secure the faithful performance of his duties, so far as the collection and settlement of the *State* taxes are concerned. A necessary deduction from these propositions is, that the sureties on the bond to the Governor, are not liable for a failure to pay over the County taxes. To settle this question, it is not necessary to go behind the Act of 1804, which was of force when this proceeding was instituted. By *the 5th section* of that Act, *Collectors* are required to enter into bond, with *sufficient* securities, before they enter on the duties of their office. By the 6*th sect.* the *Governor* is required to take bond of the *Collectors*, with security, " for the due performance of all the duties required of them." *The Justices of the Inferior Court,* in the same section, are charged with the duty of receiving and causing the bond to be executed, and of seeing to it, that the security is sufficient. They are "to approve" the sureties. *Cobb's N. D.* 1046. This bond is "for the due performance of all the duties required" of the Collector—required by law. Not one, or a part of these duties, but all. It is his *official* bond, intended to insure fidelity in the execution of his trust, and thus to protect the public from loss. The law makes no specification of his duties; nor does it limit the extent of the obligation

assumed by the sureties. They undertake for him, that he will duly perform all the duties which the law devolves upon him; and if he makes default in any, they agree, by signing his bond, to make it good. It is into such a league, and no less, that they come. This is clear from the law under which the bond is taken. Their obligation is co-extensive with the objects and ends contemplated by law, in requiring bond and security. It is furthermore manifest, from the very terms of their contract. In this very bond they agreed, that if their principal, *Richard Bassett*, Tax Collector of the County of *Bibb*, for the year 1849, shall not well and truly do and perform all and singular the duties required of him, in virtue of his office, as Tax Collector, according to law and the trust reposed in him, then they will be bound to the *Governor* in the sum of $18,000, to make good his default. It is not for them, therefore, to demur to any liability, which grows out of a failure on his part, faithfully to do and perform any duty required of him by law, in virtue of his office. And what are the duties required of him? To collect and pay over, by a specified time, the State taxes. Nor is this the whole of his duty. He is required expressly, by the *Act of* 1821, to collect the extraordinary taxes levied by the *Justices* of the *Inferior Court* for County purposes; and the same Act provides a compensation for this service. *Cobb's N. D.* 184. One of the duties then, devolved upon him by law, in virtue of his office, is to collect and pay over the County tax; to do which, faithfully, his sureties have guarantied. They signed his bond with knowledge of the fact, that it was a part of his official duty to collect and pay over the County taxes; for they are presumed to know and to contract in reference to the public laws of the State.

This is not all. By the Act of 1810, the Justices of the Inferior Court are authorized to issue, in their own names, for the use of the County, execution against any Tax Collector and his sureties, who may be in default for the County taxes. *Cobb's N. D.* 1056. When in default for the State taxes, execution is issued by the Comptroller. Here is a remedy provided for the Counties. The Act of 1810 was re-enacted in 1815. *Cobb's N. D.* 1062. And with greater clearness and

stringency by the Act of 1825. *Cobb's N. D.* 1066. It is not to be questioned therefore, that the sureties are liable on this bond, unless their liability is relieved by the Act of 1821, which authorizes the taking of a separate bond for the County tax. We are clear that it is not. The Act is in the following words: "It shall be the duty of the *Tax Collector* of any County in which an extraordinary tax may be levied in the manner provided in the foregoing sections of this Act, upon being required to do so by the *Justices of the Inferior Court,* or a majority of them, to give bond and approved security to the *Justices* aforesaid, or their successors in office, in a sum not exceeding double the amount of the extraordinary tax assessed, conditioned for the faithful collection and payment of the same into the Clerk's office of the *Inferior Court;* there to remain subject to the order and application of the *Justices of the Inferior Court,* for County purposes, &c." *Cobb's N. D.* 184. The bond authorized by this Act is accumulated security for the collection and payment of County taxes. It does not supersede the liability of the sureties on the general official bond, but provides a security in addition thereto. They are liable, with or without any second bond, upon this undertaking, that the Collector shall perform all the duties of his office, one of which, we have seen, is the collection of the County tax. It is made the duty of the Collector to give this additional bond, when required so to do, by the *Justices of the Inferior Court.* They are not required by the law to demand it. It is within their discretion to require it or not. This is obviously the intention of the Act. It does not make it a qualification for entering on the duties of his office. The giving the other bond is a precedent condition to performing the duties and receiving the emoluments of the office. And if he presumes to collect taxes without giving it, he is subject to a heavy forfeiture, and a severe penal infliction. This bond he is bound to give, only "upon being required so to do, by the Justices of the *Inferior Court,* or a majority of them." They demand it, if in their judgment the interest of the County requires it, and not otherwise. This discretion is left with them for good reasons. The amount of

the County tax is not ascertained when the general official bond is given. It may be more or less. The first bond may or may not be amply sufficient. The sureties, or some of them, may be solvent when it is given, and become insolvent, or may depart the realm and eloign their property. The taking of a second bond being a matter of discretion, if they do take it, I should hold the sureties still bound on the first, with the sureties on the second; and if, as in this case, they do not take it, we are well satisfied that the sureties on the first bond are liable.

[3.] At the January Term, 1850, the *Inferior Court* passed an order, reciting, that *Richard Bassett*, Tax Collector for the County of *Bibb*, had collected the sum of $5024 57 cents, and had refused to pay over the same to the proper authorities entitled to receive it; that the same was levied for County purposes, and as such collected, and was now in his hands, and had been duly demanded of him ; and directing that execution issue against him and his sureties, (naming them) in terms of the Statute, for the aforesaid sum of money, with interest at the rate of 25 per cent. and that the order be entered upon the minutes of the Court. Upon this order, execution issued against *Bassett* and his sureties, for the sum of $5024 57 cents, with 25 per cent. interest and cost, in the name of *George W. Towns, Governor and Commander in Chief of the Army and Navy of this State, for the use of the Inferior Court, for the County of Bibb.* In the progress of the trial, divers exceptions were made upon this order and the execution issued upon it. It is insisted by counsel for the plaintiffs in error, that this order and execution are void, because,

1st. The order was granted at *January Term of the Inferior Court ;* and there is by law, no such term for the *Inferior Court* of *Bibb* County.

2d. Because the order was taken and the execution issued for a larger sum than, as turned out in evidence, the Collector had collected and held in his hands at the time. And as part and parcel of this position, they say, if they are void in part, they are void as to the whole.

3d. Because the *execution* ought to have issued in the name of the *Justices of the Inferior Court,* for the use of the County of *Bibb,* instead of *Geo. W. Towns, Governor, &c. &c.* for the use of the *Inferior Court of Bibb County.*

4th. Because the *execution* was made returnable before the *Inferior Court,* when it ought to have been returned to the *Superior Court,* the *Inferior Court* having no jurisdiction of the cause.

5th. Because the execution does not follow the judgment or order upon which it is founded.

All these grounds were assumed before the Court below, either in the *illegality,* or as exceptions to the admissibility of the *execution* in evidence, and were overruled. It is not material how the questions are made—they are here for consideration.

The principles upon which public agents act, where they are authorized to issue process for the collection of public money, when stated, afford a sufficient answer to several of those exceptions. The execution in this case was issued by virtue of the Act of 1825. The first section is as follows: " In all cases where there may be any tax due to the *County,* in the hands of the *Collector* of any *County,* and collected by the Tax Collector of any County, and not paid over to the proper authority on or before the first Monday in December next, after the same may be collected in any year, the *Justices of the Inferior Court,* or a majority of them, in each County be, and they are hereby authorized, immediately to issue execution against any Tax Collector and his securities, so neglecting or refusing to pay over such tax." The 2*d section* makes him liable for 25 per cent. interest. *Cobb's N. D.* 1066.

. [4.] The power conferred upon the *Justices* by this Act, is not conferred upon them as a Court, but as individuals. They are the agents of the State, made so by this Act, for the purpose of collecting the public funds in the hands of the Collector. Whilst they are for the purposes of each County more immediately, yet the whole State is interested in them. Each of the Counties have as much interest in the County taxes, of all the rest, as each County has in the social, educational and

monetary prosperity of all the rest.   County taxes are raised
by legislative authority.   They can be raised no other way.
They are a part of the public revenue of the State.   To collect
them when in arrear, the *Legislature* has clothed the Justices
of each County, or a majority of them, with the power of issuing
a process.   It is called *an execution.*   It is in the nature of
a distress.   It issues without a trial, and without a judgment.
*The State* moves by its agents, directly upon the Collector
and his sureties, and seizes and sells their property by a process
which it calls an execution, and which is an execution.   It
is the process by which the Collector is forced, and his sureties
who are his vouchers, are forced to perform a duty, which he
and they owe to the State, and that is to pay up the public
funds in arrear.   It is the same kind of power with that with
which the Comptroller is clothed, and with that with which
the *Collector* himself is clothed.   *See Doe ex dem. Gladney vs.
Deavors, lately decided at Columbus, ante, page* 81.   Upon this
view of the duties and powers of the Justices in this regard,
it is quite immaterial whether the order was passed in *term
time* or in vacation.   It was an act of the *individuals* and not of the
Court.   So also, upon this view, the execution is properly re-
turnable before themselves; and the two objections, that the
order was issued at an impossible term and returnable before
them at the subsequent March Term, fall to the ground.

The law makes it the duty of the Collector to pay in the
County taxes on or before the first Monday in December.   If
he fails to do it, he and his sureties are immediately liable to
process of execution.   The execution is to be issued by the
Justices.   They are to determine what amount is not paid.
Clearly there is but one way for them to ascertain that fact,
and that is, to give him credit for what is paid of the County
assessment, and issue execution for the balance.   It is an un-
fair construction of the Act of 1825, to say that it intends that
execution shall issue only for the sum that he has in fact
collected and holds in his hand.   If this be the true construction,
then, the Collector is perfectly safe, if he folds his hands
and declines to collect a single dollar, or having collected the

taxes, puts them out of his hands in the purchase of property or in any other way. It must be admitted that the Act is framed with singular inaptness of phraseology. It declares that in all cases where there may be any tax due to the County, in the hands of the *Collector*, and collected by him, and not paid over to the proper authorities, on or before the first Monday in December, execution shall issue. The *letter* bears the construction of plaintiff in error; but that construction makes the Statute suicidal. It is ambiguous, and therefore open to construction, and we must look to the subject matter and the objects in view, to get at the legislative intention. The subject matter is the County taxes, and the object is to provide means of collecting them out of the Collectors and their sureties. This object could not be effected, if execution could issue only for the taxes *collected and in hand.* To give any proper effect to the Act, we · must infer that the Legislature meant to say, that the amount due to the County from the Collector should be the sum for which the execution should issue ; and when not paid over by the first Monday in December, that it should be considered as collected and in hand. This is not an unreasonable presumption, when it is recollected with what promptly coercive powers the Legislature has clothed the Collectors. It would be curious indeed, if, to such a process as this, and in the face of this Act, and in the teeth of the policy of all our legislation upon these subjects, the Collector in arrear on the first Monday in December, could come in and say, I have not collected these taxes ; or, I have collected them, but they were not in hand, for I have paid them for land and negroes. His duty is to collect and pay, by the first of December; and if he has not done so, it is the duty of the *Justices* to issue execution at once, for all the taxes on that day unpaid. So we hold that there is nothing in the exception that the execution issued for more than was proven to have been collected, and that if it be bad in part, it is bad as to the whole amount.

Nor do we perceive that there is any force in the objection that the execution does not follow the order. In point of fact it follows the order very closely. I cannot find wherein there

is a variance. It is right that the Justices should keep a re-cord of their proceedings. The order was necessary as a me-morial of their action. But it is not a judgment. It was not neces-sary to pass such an order, as the basis upon which an execu-tion might issue. It issues upon the balance due by the authori-ty of the law. If so—and about that there is no doubt—if there was a variance, the variance would not be fatal to the execution. This objection goes upon the idea that the execution issues upon a judgment, as in cases of judgments rendered upon trials at Law or in Equity. If this order be a judgment then, all the exceptions which assail it, which I have been considering, ought not to have been considered; because *illegality* cannot go behind the judgment, but reaches only matters in discharge of the execution.

If this proceeding had been instituted against *Bassett* and his securities, on a bond given under the Act of 1821, the execu-tion would then have issued in the name of the *Justices of the Inferior Court, for the use of the County of Bibb,* as counsel con-tend this execution ought to have been issued; because, that bond is taken, payable to the *Justices of the Inferior Court.* This execution is issued to charge *Bassett* and his securities on his general official bond, which is made payable to the *Governor.* It follows the bond, and was legally issued in the name of the *Governor,* for the use of the *Justices* of the *Inferior Court of the County of Bibb.* The Governor is the obligee of the bond, and the *Inferior Court,* as agents of the County and trustees of its funds, are the users.

[5.] We think that the Court was right in instructing the Jury that the plaintiffs in error were entitled to a verdict only for such orders as were paid over or tendered. The *Inferior Court* had authorized the Collector to receive County orders of a certain description in payment of County taxes; and they instructed their attorney to allow them in settlement with the Collector, for the balance due the County. Upon the trial he claimed a credit for certain of these orders, although not turned over to the Court, or tendered to them or their attorney in payment, or brought into Court and there tendered. These orders could not be al-

lowed in his favor, without being taken up by the Court—without subjecting them to the necessity of paying them twice.    They are negotiable, and were presumed to have  been transferred by the Collector and  still  outstanding.   The  Court  did  not err in holding him to produce them.   Certainly it was a demand of extraordinary modesty to ask to be credited  with orders  which he had not returned to the Court,  and  which  he did not offer to their acceptance out of Court, and which he  could not produce in Court ;  simply because he had received them from  the tax-payers.   Just as well might he ask a  credit for  money received for taxes, which he had not paid over and which he does not bring into Court and plead as a tender.

[6.]  The exception, that the Jury which tried the cause  was not the Jury stricken, was waived in the argument.   When the cause came on to be  tried,  counsel  for  the  plaintiff  in  error objected to all and singular the array, upon the ground that they being citizens of *Bibb* County,  were  interested  in  the  event of the issue, which being overruled, they excepted.   This  is  a challenge to the polls, *propter affectum.*   Counsel  for  the plaintiffs in error rely upon the case of *The  Mayor,  &c. of Columbus vs. Goetchius,* 7 *Geo. R.* 139.   That case  is  distinguishable from this.   It was *trover* for a slave,  brought  against  the Mayor of Columbus ; and  certain  members  of  the  Jury who tried it, were held incompetent, because they were citizens  of  *Columbus* and interested in the event.   We held  them interested, because they were liable to be taxed to pay the  verdict.   The  verdict in that case against the *Mayor, &c.* was virtually a verdict against the citizens  whom that corporation  represented ; to pay which, the citizens were liable to be taxed.   Here,  the  citizens of the County, if interested, have not in the event  of  this suit, so direct an interest.   If the plaintiffs in execution in this case, fail to recover of the Collector and his sureties, it creates no charge upon  the  County—fixes no claim, to pay which, the citizens may be taxed.   Such failure may or may not make it  necessary for the County to assess and levy additional taxes.   The  fund, if received, goes into the County treasury, and each  citizen of the County, and I may add, each citizen of the State is, in some

sense, interested in its being paid over.   But it is not so large
an interest, or so direct and immediate an interest as the citizens of *Columbus* have, in the event of a suit brought against
their corporation, and which they may be taxed to pay.   But farther, it was competent in that case, to get a Jury from the County, not citizens of *Columbus*.   So that excluding the citizens of
*Columbus*, did not defeat altogether the plaintiff's remedy; but
here, if the citizens of the County are excluded, the *plaintiffs
in execution* have no remedy, and the administration of the law
fails.   There is nothing truer and nothing sounder, than that
Jurors must be *omni exceptione majores*.   Interest in the issue
to be tried is a good and sufficient ground of challange.   No
man can sit in judgment in his own case.   Natural reason—
natural justice, and all good social policy, forbid such a thing,
and the Common Law will not permit it.   No matter how slight
the interest which a Juror may have in the issue, if he has any,
the Common Law will not permit him to try it.   The law will
not trust the rights of parties to the passions of mankind.   The
Sheriff who impannels the Jury—the Jury and the witnesses,
must be indifferent between the parties.   Thus profound is the
sense of the importance of impartiality, which our civilization entertains in the administration of the law.   "The law,
(says Lord *Mansfield*,) has so watchful an eye to the pure and
unbiassed administration of justice, that it will never trust the
passions of mankind in the decision of any matter of right.
If, therefore, the Sheriff, a Juror, or a witness, be in *any sort interested* in the matter to be tried, the law considers him as under
an influence which may warp his integrity or pervert his judgment, and therefore will not trust him."   3 *Burrow*, 1856, '7.
12 *Mod.* 669.   *Hob.* 87.   1 *Salk.* 396.   2 *Johns. R.* 194.   1
*Bay*, 230.   8 *S. & R.* 444.   2 *Tyler*, 401.   To exclude
a juryman, it is not necessary that he be entitled to a part of the
recovery.   His incapacity arises from a bias in the facts which
he is to try; "and whatever be the facts which that bias touches, he is incapable of trying those facts."   *Burrow*, 1857.
We are not disposed to relax this Common Law rule, except in
cases situated as this is.   I am rather inclined to the opinion,

that upon the Common Law principles stated, the exception was well taken in this case. According to those principles, I do not see but that the Jury ought to be held as having, in the facts to be tried, a disqualifying interest. The main fact is the indebtedness of the Collector to the County. If found for the plaintiffs in execution, the fund is in hand for the purposes of the County—the repairing and building of bridges, the maintainance of the poor, education, &c.—and ready to be applied in discharge of engagements which, it is fair to presume, the County has already made, upon the faith of the assessment. In that event, it is also fair to presume that no other or farther assessment will be necessary to meet those engagements. But if found for the defendants, it is to be presumed that further assessment may become necessary to meet those engagements. Under such circumstances, is it right to trust the passions of the taxpayers to try the issue ? The Supreme Court of New York excludes Jurors, under very similar circumstances. In a *Quitam* action to recover usurious interest, one moity of which, by Statute, goes to the use of the poor of the town where it was received, that Court would not permit inhabitants of the town to try the action. 2 *Johns. R.* 194. It must be obvious, however, that the interest of the Jury in the case in hand, is slight, remote and uncertain; and that the presumptions of a bias growing out of it, extremely weak. It is scarcely greater than that which any citizen has in good and effective government, or in the general administration of justice. It is no greater than that which Jurors have in the trial of criminal offences, any portion of the penalty for which, goes to the County. In such cases, I have not known in this State, the competency of the Jury to be questioned. Such being our view of the character of the interest of the Jury in this case, I proceed to state the grounds upon which just such a case as this is, is not, in Georgia, within the operation of the Common Law rule. I remark first, that this is a *tax collection* case. To secure the payment of the public revenue, more than the ordinary powers, as we have in this opinion before shown, are conferred upon the agents of the Government; and the citizen has been brought under some severe limitations of

great and fundamental principles. For example, execution issues against tax payers and Tax Collectors without a hearing, and without a judgment. When a tax payer is in default for the State tax, the Judiciary is forbidden to interfere between him and the State, and he is not entitled to a trial by Jury—the *use,* of the trial by Jury, before the Constiution of '98, being subject to that limitation. These exceptions to the usual course of administration, spring out of an inexorable State necessity, in the allowance of which, the wisdom of years has proved the general good to consist. Why should not the same necessity justify a relaxation of the stringent rule as to the qualifications of Jurors, in cases which involve County taxes; for they, also, are in a just view of them, a part of the *public* revenue? But we do not rest this case here. By the State Constitution, civil causes, with some exceptions, within which this case does not fall, are to be tried in the County where the defendant resides. There is no provision in the Constitution and Laws for a change of venue. This cause can be tried nowhere but in the County of Bibb, where all the defendants reside, and if not tried there, it cannot be tried at all. If citizens of *Bibb* are incompetent to try it, then it follows that the administration of the law utterly fails, and the State cannot compel the Collector to pay over the public money in his hands. In view of these things, we hold that the Legislature, when it authorized the collection of County taxes from the Collector and his sureties, had in view the fact that issues might be made to be passed upon by a Jury of the County, and that the laws thus authorizing the collection, operate a repeal of the Common Law, *in such cases,* so far as the amount of interest which the citizen might have in the issue, would, by the Common Law, disqualify them as Jurors. I do not perceive, that in those cases where in this country, the rigid rule of the Common Law has been enforced, the administration of the law would have failed, by reason of the impossibility of trying the cause elsewhere, or by reason of the impossibility of getting a Jury wholly unexceptionable, where the case was tried. In the case against the *Mayor, &c. of the City of Columbus,* the administration of the law did not fail by excluding citizens of

*Columbus*; because a Jury could be had there from the citizens of the County, not resident within the corporation. In the case cited from *Bay*, the right of the Court to change the venue was recognized. Even in England, I am inclined to think, that the rule would be released in cases like this, when the exclusion would altogether defeat a trial. The very point was made in the case quoted from *Burrow*. Lord *Mansfield* did not determine, but seemed to waive it, by ruling, that as the case was made triable only in the Court of the corporation and by freemen of that corporation, by a law of their own, it was their own fault. His language is as follows: "it is said that if the defendant's challenges be allowed, the corporation will be left without a remedy on the by-law. The answer is, that if the fact be true, that they can impannel no Jury but freemen, the fault was their own, in confining the action to their own Court. On the other hand, if they had the power (as the City is a County of itself) to have impannelled non-freemen, it was their own fault that they did not." 3 *Burrow*, 1858. In thus ruling, we are sustained by the *Supreme Court of Massachusetts*. 5 *Mass*. 90. Our judgment is, that in cases against Tax Collectors, where the interest of the Jury is remote, slight and uncertain, and when their exclusion would defeat altogether the enforcement of the law against them, that the citizens of the County are not disqualified as Jurors, because of that interest.

Let the judgment be affirmed, generally.