## 5572.  FITZGERALD GRANITOID CO. *et al. v.* ALPHA PORTLAND CEMENT COMPANY.

1. A defendant against whom a judgment has been rendered after he has been duly served has had, in legal contemplation, his "day in court," and can not go behind the judgment by affidavit of illegality. If he has been deprived of a hearing by the plaintiff's fraud, unmixed with negligence on his own part, a petition in equity to set aside the judgment will lie. No ground for the interposition of an affidavit of illegality is presented by an allegation that the defendant "was denied his day in court by an agreement had with plaintiff's attorneys, prior to the return day of the court, to place a credit upon the note sued on of $150," and "not to take a judgment without extending said credit or notifying" him; upon which agreement he relied, in not appearing and not defending the suit.

2. The judgment, as it appears on the record, itself contradicts the allegation of the affidavit of illegality that the execution did not follow the judgment. The court could take judicial knowledge of the contents of the judgment.

3. Since the title of a purchaser at a sheriff's sale "depends upon the judgment, the levy, and the deed," "all other questions are between the parties to the judgment and the officer." *Brooks v. Rooney*, 11 *Ga.* 427-8. Errors in an advertisement of property levied on can not properly be made the ground of an affidavit of illegality, but the party suffering thereby will be remitted to his remedy against the officer.

DECIDED SEPTEMBER 11, 1914.

Affidavit of illegality; from city court of Fitzgerald—Judge Griffin. January 8, 1914.

*E. Wall,* for plaintiffs in error. *McDonald & Grantham,* contra.

RUSSELL, C. J. The plaintiffs in error contend that they have been deprived of their day in court, and that an affidavit of illegality is their remedy. It appears that the Alpha Portland Cement Company brought suit against the Fitzgerald Granitoid Company, a corporation, as principal, and C. W. Hayes, as indorser, upon a promissory note for $456, with interest and attorney's fees. The petition and process were duly served upon the corporation, and personally upon Hayes. No issuable defense having been filed, judgment was entered by default on September 5, 1913, against the principal and the indorser, and execution was issued on the same day. On November 6, 1913, the execution was levied upon certain personal property, and on December 2 the defendants interposed an affidavit of illegality to the levy. The illegality is based upon three grounds: (1) "Deponent has never had his day in court, and was denied his day in court by an agreement had with plaintiff's attorneys prior to the return day of said court to place a credit upon the note sued upon of $150. Relying upon said agreement, deponent did not appear and defend said suit. Plaintiff's attorneys further agreed not to take a judgment without extending said credit or notifying deponent, and, relying on said agreement, deponent did not appear and defend the suit, and was not notified of the judgment having been taken until it was too late to defend the suit." (2) "Because the execution does not follow the judgment; the judgment recites and was only taken against the Fitzgerald Granitoid Company, and the execution recites and was issued against Fitzgerald Granitoid Company and C. W. Hayes, indorser. Also the amount of the attorney's fees recited in the judgment is $40.83, and in the execution the amount of attorney's fees recited is $46.83." (3) Because the property levied upon is being advertised for sale as articles difficult and expensive to transport, when such is not a fact, but the property levied on is personal property which can be easily transported, especially the horse, and the execution is proceeding illegally in attempting to sell the property otherwise than before the court-house door. At the trial the plaintiff in execution made an oral motion to dismiss the affidavit of illegality, on the ground that it was insufficient in law. The court sustained this motion and the defendants excepted.

1.   Nothing is better settled than that the right to file an affidavit of illegality as provided for in the Civil Code, § 5305, does not include the right to go behind the judgment.   Section 5311 of the Civil Code provides that, "If the defendant has not been served, and does not appear, he 'may take advantage of the defect by affidavit of illegality; but if he has had his day in court he can not go behind the judgment by an affidavit of illegality."   In the case sub judice, if there had been no service, the judgment would have been a nullity and an affidavit of illegality would lie, but both of the defendants were served, and therefore the only question which arises (assuming the statements of the affidavit to be true) is whether they can by affidavit of illegality take advantage of the fact that they were misled by the plaintiff's attorneys, and thus fraudulently induced to remain away from court and prevented from making a defense.   In *Tumlin* v. *O'Bryan,* 68 *Ga.* 66, it was held that if a judgment is rendered against a defendant by fraud, accident, or mistake, or the act of the adverse party, unmixed with negligence on his own part, his remedy is by motion to vacate the judgment, or bill in equity for relief.   That an affidavit of illegality is not the proper remedy in such a case was said to be "too manifest for doubt."   "Where there was service, jurisdiction in the court of the amount and person, as well as judgment against the defendant, although such judgment may not have been founded on sufficient evidence, or rendered by default, it is conclusive as against an affidavit of illegality based on causes anterior thereto." *Green* v. *Oliphant,* 64 *Ga.* 565.   In *Hood* v. *Parker,* 63 *Ga.* 510, it was held that "to deny that the judgment ought to have been rendered, on account of pre-existing facts, is to go behind the judgment."   In the last-named case the affiant set up that he appeared in court and proposed to file his plea of discharge in bankruptcy, when the justice of the peace presiding informed him that it was unnecessary and that no judgment would be rendered against him. The defendant left, and had no intimation that the judgment had been rendered against him until the fi. fa. was issued.   Chief Justice Bleckley ruled that "The rendition of judgment after such assurances, and after the party had withdrawn from the court on account of them, was, even if not corrupt, deeply and shockingly erroneous; but the remedy was certiorari and not affidavit of il-

legality. There is no denial that summons was duly served, and it is plain that the defendant might have pleaded and defended the suit if he had been so disposed. He can not be heard upon an affidavit of illegality to show why he did not exercise this privilege." The law prior to the code was perhaps even more strict than the provisions of section 5311, supra. See *Rogers* v. *Evans,* 8 *Ga.* 143 (52 Am. Dec. 390) ; *Mangham* v. *Reed,* 11 *Ga.* 137; *Bassett* v. *Governor,* 11 *Ga.* 220. In *Southern Railway Co.* v. *Daniels,* 103 *Ga.* 541 (29 S. E. 761), the contention here made, that the defendant had not had a day in court, was answered by the ruling of Presiding Justice Lumpkin, who said, "A defendant against whom a judgment was rendered after he had been duly served has, in legal contemplation, 'had his day in court,' and 'can not go behind the judgment by an affidavit of illegality.'" If the defendants in this case were deprived of a hearing by the fraud of the plaintiff's attorneys, unmixed with negligence on the part of the defendants, their remedy would be a resort to equity, by a petition to set aside the judgment. See *Brewer* v. *Jones,* 44 *Ga.* 71. In any event, the fact that the attorneys of the plaintiff in the case at bar, by misleading the defendants, may have prevented them from defending the suit puts them in no better legal position than was the party filing the affidavit of illegality in *Hood* v. *Parker,* supra, who was misled by the justice of the peace. A justice of the peace may be assumed to be at least a benevolent and impartial arbiter, whereas the statements of the attorneys of one's adversaries are to be regarded with more or less caution, naturally induced by the fact that their first duty is to their clients.

2. As to the second ground of illegality, to the effect that the execution does not follow the judgment, because there was no judgment against the indorser, and because the judgment for attorney's fees was only for $40.83, it is doubtful if this ground might not be treated as abandoned, since there appears in the brief only a very general and indefinite mention of it as one of the assignments of error in the bill of exceptions. However, we think the court could very properly hold that this ground was insufficient, for it appears from the record as transmitted to this court that the execution does in fact follow the judgment exactly. Judgment was taken against the indorser, and the amount of the judgment for attorney's fees was not $40.83, but $46.83, just as it appears in

the execution. We think the court could take judicial cognizance of the contents of a judgment which the court itself had rendered, and that it would be palpably unnecessary to submit to a jury an issue which must have but one result. In any event, the plaintiff in error was not hurt by the court's ruling upon this ground of the illegality, as now appears from an inspection of the certified transcript of the record of the judgment and execution. It has uniformly been held in this State that a judgment rests in the heart of the court until the adjournment of the term at which it was rendered, and during that time is, of course, within the knowledge of the court, but the question as to whether judicial knowledge extends to judgments rendered at previous terms of court does not seem to have been expressly decided. But the proposition that courts will take judicial notice of papers, orders, and decrees growing out of the same litigation and the various steps taken in the same litigation seems to be well settled in other jurisdictions. Butler *v.* Eaton, 141 U. S. 230 (11 Sup. Ct. 985, 35 L. ed. 713); Bailey *v.* Kerr, 180 Ill. 412 (54 N. E. 165). In the Bailey case the court said: "The rule is well settled that a court will take judicial notice of the state of the pleadings, and the various steps which have been taken in a case pending before it" (citing Secrist *v.* Petty, 109 Ill. 188). See also Farrar *v.* Bates, 55 Tex. 193; Boze *v.* Island (Tex. Civ. App. 94 S. W. 460); Wilson *v.* Calculagraph, 153 Fed. 961 (83 C. C. A. 77); Haaren *v.* Mould, 144 Iowa, 296 (122 N. W. 921, 24 L. R. A. (N. S.) 404), and citations. In Flood *v.* Libby, 38 Wash. 366 (80 Pac. 533, 107 Am. St. R. 851), the court held that "A proceeding supplementary to execution is merely auxiliary to the original action, and the court will take judicial notice of the entire record."

3. By the third ground of the illegality it was sought to arrest the sale because, as alleged, the sheriff advertised that the sale would be held at a place other than the court-house, and because a large part of the property levied upon was not difficult or expensive to transport and expose at the court-house door. It seems to be well settled that where injury is likely to accrue to a defendant from the failure of the sheriff to properly advertise property, or on account of the sheriff's having improperly advertised it, the defendant must look to the sheriff. The remedy is not by affidavit of illegality, but by an action against the sheriff upon his bond.

In *Jeffries* v. *Bartlett, 75 Ga.* 230, the affidavit of illegality set up that there was no proper description of land levied upon. The court did not pass upon the sufficiency of the description, because the advertisement was not set out in the pleadings, but said: "We are inclined to think that errors in an advertisement of sale of land levied on by execution can not be stopped by affidavit of illegality, and the party suffering thereby will be remitted to his remedy against the officer." In *Treadwell* v. *Beauchamp, 82 Ga.* 736 (9 S. E. 1040), the sheriff was ruled for accepting an affidavit of illegality which set up deficiencies in the sheriff's advertisement and his description of the premises levied upon, and the judgment of the superior court, discharging the rule against the sheriff, was reversed. The grounds of the affidavit of illegality in that case, as in the case at bar, related to the nature of the advertisement of the sale by the officer; and in passing upon them Chief Justice Bleckley said: "If either of these grounds was good, it must have been because the sheriff failed to perform his duty, and of course he can take no advantage of a delay which was the result of his own fault. . . We have never seen a more frivolous affidavit than this. Surely the sheriff is bound to know some law. He says he took the advice of counsel. We suppose, from the quality of the advice, he must have obtained it gratis; but if he paid for it, he might be able to recover damages from his attorney for giving such advice, if any damages have been or should be sustained."

There was plainly no merit in any of the grounds of illegality, and the trial judge did not err in overruling and dismissing all of them upon oral motion. *Judgment affirmed. Roan, J., absent.*