20641. BATCHELOR *v.* THE STATE.

DECIDED JULY 16, 1930. REHEARING DENIED OCTOBER 2, 1930.

*W. O. Cooper Jr.,* for plaintiff in error.
*John Y. Roberts, solicitor,* contra.

LUKE, J. J. H. Batchelor was convicted of committing adultery with Mrs. Annie Laurie Dyes, the wife of S. L. Dyes. The first question for determination is whether or not the court erred in overruling the defendant's plea in abatement to the accusation, which set up that "said accusation and affidavit is based on a warrant sworn out by the husband of Mrs. Annie Laurie Dyes, with whom the defendant is charged in said accusation with the offense of adultery and fornication."

In passing on the plea in abatement the court could consider the record in the case. *Fitzgerald Granitoid Co. v. Alpha Portland Cement Co.,* 15 *Ga. App.* 174 (2), 178 (82 S. E. 774). It appears from the record before us that on March 23, 1929, S. L. Dyes made an affidavit before the deputy clerk of the municipal court of Macon that J. H. Batchelor committed the offense of adultery and fornication on February 7, 1929, with Annie Laurie Dyes, and that a warrant based on said affidavit was issued by said deputy clerk on March 23, 1929. It further appears that the names of S. L. Dyes

and several other witnesses were indorsed on the warrant. The accusation on which the defendant was tried, dated April 4, 1929, was based on an affidavit sworn out on that date by R. A. Moore before C. H. Hall, judge of the city court of Macon. It charged J. H. Batchelor with a misdemeanor, in that he had unlawful sexual intercourse with Annie Laurie Dyes on February 7, 1929. Said accusation was signed by R. A. Moore as prosecutor and John Y. Roberts as solicitor of the city court of Macon.

. The defendant relies on the case of *Smith* v. *State,* 14 *Ga. App.* 614 (81 S. E. 912), where it was held that "the wife can not make an affidavit which furnishes the basis for a warrant, or sign an accusation, charging another woman with adultery committed with the husband." Under this decision the husband in the case at bar would not be competent to make an affidavit to support an accusation charging the defendant with adultery with the affiant's wife. However, the accusation in the case under consideration was based, not upon the affidavit of the husband, but upon the affidavit of one B. A. Moore; and it was signed by B. A. Moore as prosecutor, and not by S. L. Dyes, the husband of the defendant's paramour. Therefore this case is not controlled by the *Smith* case, supra. "A prosecutor is one who instigates a prosecution by making an affidavit charging a named person with the commission of a penal offense, on which a warrant is issued or an indictment or accusation is based." *Eady* v. *State,* 10 *Ga. App.* 818 (74 S. E. 303). It may also be noted, in passing, that the accusation in this case complies with the following requirements set out in the decision in the *Eady* case: "An act of the legislature creating a city court, which provides that 'defendants in criminal cases . . shall be tried on a written accusation . . founded upon the affidavit of the prosecutor,' is fully complied with by a written accusation filed in the court, signed by the solicitor of the court, which recites that it is founded upon a designated affidavit, set out in full immediately preceding the accusation, and referred to therein as the 'above and foregoing affidavit.'" We quote the following from *Harris* v. *State,* 11 *Ga. App.* 137 (3) (74 S. E. 895): "One present in court for the purpose of being tried under a criminal accusation may be placed on trial under another accusation charging an offense growing out of the same transaction and based upon a new affidavit, even though no warrant for the arrest of the accused was

issued based upon the second affidavit." We are satisfied that the court properly overruled the plea in abatement, and so hold.

It appears from the brief of evidence that the defendant was a brother-in-law of Mrs. Dyes, the wife of S. L. Dyes; that Dyes married Annie Laurie in November, 1916, and had by her two children, girls aged six and nine respectively; that they separated on January 12, 1929; that Mrs. Dyes appeared to be a young woman; that the defendant married in the year 1918 or thereabouts; that he had by this wife two children, aged seventeen and twenty respectively at the time of the trial; that he and this wife lived together until January 12, 1929, when they separated because of a letter written to him by Mrs. Dyes, which had been intercepted and read by both Mrs. Batchelor and Mr. Dyes. Walter Brown, a son-in-law of the defendant, testified that the defendant told him that he had met Mrs. Dyes before she married Dyes, and that he made up his mind "that she would be his wife in heart, if not in name;" that he had been going with her about twelve years; that when the witness told the defendant that he "had something on him," the defendant said, "For God's sake, don't tell her, because she is scared to death;" that the witness had seen the defendant riding with Mrs. Dyes several times; that on one occasion he saw Mrs. Dyes in the defendant's arms in an automobile parked beside the road; that the defendant told witness that he supposed he would have to leave home "because of the letter," that they "had a little black and white on him;" that the defendant promised to furnish the witness with a home and be his lifelong friend if he would get the letters which were in Mrs. Batchelor's possession; that after Dyes had read the letter written by his wife to the defendant, the witness carried Mrs. Dyes to Houston county, for the reason that Dyes "might become dangerous."

On Sunday, February 3, 1929, the defendant, with Mrs. Dyes, went to the residence of Mr. and Mrs. John G. Coppage on Mulberry street in Macon, Ga., to engage an apartment. The defendant introduced Mrs. Dyes as his wife. The apartment was composed of three rooms, the front room being a bedroom with one bed in it, the middle room being also a bedroom with only one bed in it, and the rear room being a kitchen and dining-room. The defendant said he and his wife would occupy the front room, and that his wife's sister would occupy the middle room. The defend-

ant and Mrs. Dyes moved into the apartment on Monday, February 4, but the sister did not come until Wednesday or Thursday of the same week. Mrs. Coppage testified that very early Thursday morning she was called to the phone. In passing down the steps (she and her husband being above the said rented apartment) she looked through the transom into the middle room, and saw that the bed in that room "had not been disturbed." Mrs. Coppage further testified that the bed in the middle room was not used until Mrs. Dyes' sister arrived, and that on one occasion she noticed that both pillows on the bed in the front room appeared to have been slept on; that she did not know that the defendant and Mrs. Dyes were not man and wife until she had a conversation with Mrs. Crawford, the stepdaughter of the defendant; that the night after the said conversation she and her husband went to the room the defendant had stated he and "his wife" would occupy, and knocked on the door for about five minutes before the defendant appeared; that when the defendant finally came to the door he was notified that he must vacate the apartment; that the defendant then told Mr. Coppage that he had brought his sister-in-law there because her husband had beaten her and he thought it was his duty to take care of her; and that the defendant said, "We are not sleeping together." The defendant requested that he have until the next day to get out, and his request was granted. The apartment was vacated Monday afternoon, just a week after the defendant and Mrs. Dyes moved in. Mrs. Coppage swore also that the defendant would call Mrs. Dyes over the telephone and say, "My darling wife, she is sick, and I want to talk to her."

Mrs. G. E. Crawford, the stepdaughter of the defendant, testified that she went to Mrs. Coppage's residence and called for Mr. Batchelor; that "Mrs. Coppage called Mrs. Batchelor to the door, and Annie Laurie Dyes came to the door;" that the witness went in the front room and found there the defendant and Mrs. Dyes, and Mrs. Dyes' younger sister, the trained nurse; and that Mrs. Dyes' clothes were in the front room, and her shoes under the bed in that room.

The defendant introduced no evidence. His statement to the jury was in substance that he rented the apartment with money furnished by Mrs. Dyes' brother, who "knew all about it the whole time;" that Mrs. Dyes had her room, and her sister stayed with her

every night; that he had never slept with Mrs. Dyes; that Mr. Dyes and the defendant's wife had brought the charges against him in order to send him to the penitentiary; that they had "dogged" him in every way possible; and that he was merely trying to befriend Mrs. Dyes, and was entirely innocent of the charge.

There are several cases similar to the one under consideration, but, of course, each was decided on its own peculiar facts. Many of these cases are discussed and differentiated in *O'Neal* v. *State,* 15 *Ga. App.* 487 (83 S. E. 861), and *Ramsey* v. *State,* 16 *Ga. App.* 218 (84 S. E. 984). A careful consideration of the record in the case at bar satisfies us that the evidence was sufficient to support the verdict. We have discussed the only two questions raised by the record, and are convinced that the court did not commit error for any reason assigned.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*