## THE CITY OF PORTLAND, RESPONDENT, *v.* CHAS. T. KAMM, MINOR, BY WM. S. LADD, GUARDIAN AD LITEM, APPELLANT.

APPEAL CAN ONLY BE TAKEN FROM THE WHOLE JUDGMENT, IN WHAT CASES.— Where an appeal is taken to the Circuit Court from a judgment of the City Council in the assessment of damages and benefits, under the act of December 19, 1865, entitled "An Act to authorize the city of Portland to open, lay out and widen streets and alleys, and to appropriate private property therefor," such appeal cannot be taken from a part of the judgment; but must be taken from the whole thereof, and the trial in the appellate court must be *de novo.*

VERDICT—MUST STATE THE SUM OF DAMAGES AND BENEFITS SEPARATELY.—In actions brought under the act of December 19, 1865, to authorize the city of Portland to lay out streets, etc., a verdict which finds generally is insufficient.    The verdict must state the sum of the benefits and of the damages separately, or at least show the sum of the difference between them.

JUROR—TAXPAYER NOT COMPETENT, IN WHAT CLASS OF CASES.—In an action to recover damages brought under the act of December 19, 1865, to authorize the city of Portland to lay out streets, etc., a taxpayer within the said city of Portland is not competent as a juror when challenged for implied bias.

APPEAL from Multnomah County.

This cause originated in a proceeding by the Common Council of the city of Portland for the extension of West Main street upon the premises of defendant Kamm.

The proceeding was instituted under the provisions of an act of the Legislative Assembly, approved December 19, 1865, entitled "An Act to authorize the city of Portland to open, lay out and widen streets and alleys, and to appropriate private property therefor."

Under the provisions of § 3 of said act three viewers were appointed to assess the damages and benefits resulting to adjacent landholders on the line of the proposed extension of said street, and were directed to report how much

less valuable, if any, such lands would be by reason of such location of said street.

Said viewers reported to said Common Council that the damages to defendant's lands caused by the location of said street thereon amounted to the sum of one thousand seven hundred dollars in gold coin, and that the resulting benefits to the remaining portion of defendant's land adjacent to said proposed street was one thousand seven hundred dollars in gold coin. The report of said viewers was approved by the Common Council of said city, and defendant, being dissatisfied with the assessment of benefits charged against him by the report of said viewers, appealed therefrom to the Circuit Court for Multnomah County.

Upon the trial of the cause on appeal by said Circuit Court, the jury returned a verdict in the following words:

"We, the jury in the above-entitled cause, find for the plaintiff.

"J. W. MURRAY,
"Foreman.

"June 10, 1874."

Thereupon defendant filed his motion for a new trial, which, after argument, was overruled by the court, and defendant appeals to this Court.

A statement of the errors relied upon in the appeal is contained in the opinion of the Court.

*Northup & Gilbert*, for Appellant.

*A. C. Gibbs*, for Respondent.

By the Court, BONHAM, C. J.:

The act of December 19, 1865, referred to in the statement of the facts in this case, authorizes the Common Council of the city of Portland "to open, lay out, establish and widen streets and alleys, and to appropriate private property for that purpose." (Sec. 1, p. 50, Portland Charter.)

Section two of said act provides for a survey by the city surveyor of the line of the street or alley proposed to be

located or widened, and requires him to report a plat and description thereof to the Common Council.

Section three of said act authorizes the Common Council to appoint three disinterested viewers to assess damages and benefits resulting to the owners of real estate contiguous to said proposed street.

Section four provides the manner of proceeding by said viewers, and requires them "to assess and determine how much less valuable, if any, such lands  *  .  *  *  will be rendered by the laying out, establishing or widening of such street or alley," through or over the same. It also provides for assessing the benefits accruing to the owners of land fronting on said proposed street, but not passed over or occupied by the same; which benefits it is declared shall be a lien or charge upon the land of the owners thereof so benefited. This section also provides for the payment of the benefits assessed to landholders whose lands front on such proposed street, into a fund to be applied to the payment of damages for lands occupied by such street.

Section five provides that the Common Council may set aside the report of such viewers if such council is not satisfied with their assessment of damages and benefits.

Section six makes it the duty of the Common Council, if no appeal be taken within the time allowed, or if an appeal be taken from the assessment of damages or benefits, then after the same shall have been determined, to make an appropriation to pay all damages and costs that may have been awarded, and to order warrants to issue for the same, payable out of the fund to be provided therefor; and declares that, "as soon thereafter as the full amount of such appropriation shall be in the city treasury, subject to such warrants, and the amounts respectively assessed shall be tendered to the parties entitled to the same, such property shall be deemed appropriated for the purposes of such street or alley, and not otherwise."

Section seven of said act gives, in express terms, the right of appeal by any person dissatisfied with the assessment of benefits and damages, to the Circuit Court for Multnomah County.

Section eight provides the time and manner of taking the appeal.

Section nine provides that such appeal to the Circuit Court shall be heard and determined as an action at law; that the jury shall view the premises and assess and determine by their verdict how much less valuable, if any, each lot or part thereof, with the improvements, may be rendered by the location or widening of such street or alley; and such jury is also required to assess and determine the value of the resulting benefits to lands fronting on such proposed street, when the same has been appealed from; but the jury shall not reassess any damages or benefits unappealed from.

Section ten provides that if the appellants, or any of them, fail to recover greater damages or a more favorable assessment as to benefits than was allowed by the viewers, judgment shall be rendered against such appellant for the costs of appeal and for the amount of benefits assessed by such jury against such appellants, and that judgment shall also be rendered against the city for the amount of damages allowed to such appellant where the question of damages is involved in the appeal.

The foregoing are all the provisions of the act of December, 1865, which it is necessary to consider with reference to the questions involved in this appeal. While the phraseology of the act is certainly subject to criticism on account of the obscurity in which its terms and requirements are involved, yet we think a careful examination of the same will disclose the intention of the law-maker in its enactment.

Counsel for appellant in this case claims that where the viewers appointed by the Common Council assess damages and benefits to the same person, as was done in defendant's case, such defendant is authorized by the act referred to (§ 9, p. 56, of Portland Charter), to appeal from the one and allow the other to stand. Hence appellant in this case gave notice to respondent that he appealed from the assessment of *benefits* only, and he therefore insists that the only question for the jury in the appellate court to determine was whether the assessment against appellant of $1700, as benefits, should stand as the true value of benefits, and that the assess-

ment in appellant's favor, by said viewers, of $1700 as damages, should not be considered or disturbed by the jury in the appellate court. . We think that this construction of the act referred to is not warranted by the language of § 9, which is relied upon in support of that view. In that section it is declared that no benefits or damages not appealed from shall be reassessed by the jury in the appellate court.

This language, we think, refers only to persons owning lands abutting on or occupied by the proposed street for or against whom benefits or damages, or both, have been assessed by the viewers, but which persons have not appealed at all from such assessment. Subdivision 3, of § 536, page 222, of the Civil Code, declares that "upon an appeal to the Circuit Court the manner of proceeding thereafter is the same as if the action or suit had been commenced in said court." In such case the decision and determination of the court below is vacated or merged in the judgment of the appellate court, and it is to this judgment that the parties must look for the determination of their rights in controversy. We think that in this case the trial in the appellate court should be had *de novo*, as upon appeal from a justice's court.

In an appeal to the Supreme Court from a judgment in an action at law the appellant may appeal from the judgment, or some *specified* part thereof (Civ. Code, § 527), but in a proceeding like this the appellant cannot appeal from a part of the judgment of the municipal authorities and allow the remainder thereof to stand. He must appeal from the *whole* thereof, and in the appellate court the *whole* case must be tried anew on substantially the same issues as in the court below. The Circuit Court, then, did not err in instructing the jury that in considering of their verdict they must take into consideration both the question of damages and benefits.

Appellant claims by his third assignment of error that the verdict of the jury is contrary to law, because it is not therein determined how much less valuable, if any, defendant's land would be rendered by the extension of "West Main street," as proposed, nor did said jury by their verdict determine the

amount of benefits which would result to defendant by reason of the extension and opening of said street, nor the amount of such benefits in excess of the damages.

The verdict of the jury, as has been observed, is in these words: "We, the jury in the above-entitled cause, find for the plaintiff."

This verdict is indefinite and insufficient, for the reason that it does not determine the matters at issue between the parties. It does not inform us how much the defendant was damaged, nor how much he was benefited by the extension of said street.

A verdict, although informal, is sufficient when it informs the court what judgment ought to be rendered in the case. And it is claimed by counsel for respondent that the verdict in this case shows that the jury either intended to affirm the judgment of the viewers, that the benefits and damages each amounted to the sum of $1700; or at least that they intended to find that the damages were fully and evenly offset by the benefits. But this will not do. The jury must furnish to the parties and the court a definite and tangible conclusion of the issues as adjudged by them from the evidence; and must state the sum of the benefits, and of the damages, separately, or at least show the sum of the difference between them. If it could be claimed that a verdict in favor of the plaintiffs operates as an affirmance of the assessment of the viewers, leaving it to stand undisturbed, then the verdict in this case might be held sufficient. But, by the appeal and trial anew in the Circuit Court, the decision of the viewers has been annulled and set aside, while the jury in the Circuit Court undertake to find generally in favor of the plaintiff and against the defendant, without making such findings as would respond to the issues in the cause, or enable the court to render judgment. We think that the court below erred in receiving the verdict of the jury, and entering judgment thereon against the defendant for costs.

We think, also, that the court below erred in permitting J. B. Kellogg, a resident and taxpayer in the city of Portland, to sit as a juror in this case, when challenged by de-

fendant for implied bias, under the provisions of subdivision 4 of § 184 of the Code.

Counsel for respondent claims that Kellogg does not come within the rule of *Garrison* v. *The City of Portland* (2 Or. 123), for the reason that the city of Portland, in the matter of the extension of "West Main street," had provided a fund from the assessment of benefits to adjacent land-owners equal to the total amount of damages assessed. And while it is true that by a somewhat remarkable coincidence, the viewers appointed by the city of Portland to assess the benefits and damages resulting to adjacent land-owners on the line of said proposed street found that the aggregate sum of damages was $6000, and the total benefits $6000, yet this would not have relieved Kellogg, as a tax-payer in the city of Portland, from his liability as such to be called upon to contribute, if the jury had found in favor of the defendant that his damages exceeded his benefits. The act of December 19, 1865, does not contemplate or provide that a fund shall be raised by the assessment of benefits adequate to the payment of all damages which may be allowed to land-owners on the line of a proposed new street or alley, and if it did, it would certainly be a very peculiar and, in many cases, a very inequitable provision.

In the case above cited (*Garrison* v. *The City of Portland*), the plaintiff sued the city to recover for injuries sustained by falling into a pit or unfinished cistern which had been left open without any light or guards to warn pedestrians of the danger.

In passing upon the question of the competency of a juror, who was a resident and taxpayer of the city, to sit in the trial of said cause, the Court say: "The Code (§ 184, Subd. 4) leaves the question of what is a disqualifying interest to the common-law rule, and it must therefore be interpreted in the light of adjudicated cases. The theory of a trial by jury is that the jurors shall stand absolutely indifferent between the parties litigant; that they shall be as free from interest or prejudice as it is possible for humanity to be. The authorities are numerous and uniform to the effect that an interest in the event of the suit, though

small and remote, disqualifies the juror. The jurors set aside by the court, being taxpayers, were directly responsible for a ratable proportion of whatever verdict might be rendered against the city. The ruling of the court below was in conformity with the current of authorities and right." (*Wood* v. *Stoddard,* 2 John. 194; *Russell* v. *Hamilton,* 2 Scammon, 56; *Bailey* v. *The Town of Trumbull,* 31 Conn. 581; 2 Graham & Waterman on New Trials, p. 240, *et seq.*)

Of course it might be suggested, that in prosecutions for fines and forfeitures, every taxpayer in the State might have a remote pecuniary interest in the event of the action, which, by a strict adherence to the rule, would exclude him from sitting as a juror in such case; and in cases where a county is a party, it might be claimed that all taxpayers of the county would be disqualified, and that such ruling would necessarily result in great inconvenience. To these objections we answer that we only pass upon the question presented by the transcript in this case. In this case jurors might have been obtained outside of the corporate limits of the city of Portland and within Multnomah County, against whom the objection of interest in the event of the action could not have been urged.

While it is true that the common law rule touching the incompetency of witnesses, on account of having an interest in the event of the action or suit, has been almost entirely overthrown by our statute, yet the rule disqualifying jurors, for the same reason, we think, has with unquestionable wisdom and propriety been suffered by our law-makers to remain intact. It is certainly a great safeguard and protection to our boasted right of trial by jury, in both criminal and civil cases, that jurors should be secured, as free as it is possible in the nature of things for them to be, from both actual or implied bias in the event of the suit, as well as in relation to the parties litigant.

The judgment of the court below is reversed, and the cause directed to be remanded to the court below for a new trial.