L. H. HUMBERT, Appellant, v. T. J. LARSON *et al.,* Appellees.

1. **Sale:** IMPLIED WARRANTY: PLEADING. In an action upon a promissory note given for the purchase price of a stallion, the defendant pleaded a failure of consideration based upon the fact that the horse was represented to be a sure foal getter and healthy, when in fact he was not. In another division of the answer the defendant alleged that the sale of said stallion was accomplished by fraud, and in yet another division averred special damage because of said fraudulent representations. The bill of sale transferring said stallion, and

which was attached to the defendant's answer, provided that if said horse proved barren, the vendors would, at their option, refund the money paid therefor, or furnish another horse in his place. *Held*, that the question of implied warranty was not presented by the pleadings.

2. **Special Verdict:** INTERROGATORIES SUBMITTED AFTER ARGUMENT COMMENCED: NEW TRIAL. The submission to the jury of interrogatories propounded by one of the parties to a cause for a special verdict, which were not submitted to the attorneys of the adverse party until five or ten minutes after the opening argument to the jury had been commenced, *held*, to be sufficient ground for a new trial.

*Appeal from Adams District Court.*—HON. W. H. TEDFORD, Judge.

THURSDAY, OCTOBER 12, 1893.

ACTION on a promissory note. Defense of a failure of consideration, and fraud, and a counterclaim. Judgment for the defendants, and the plaintiff appeals. —*Reversed*.

*Dale & Brown* and *W. O. Mitchell*, for appellant.

*Davis & Wells*, for appellees.

GRANGER, J.—I. The defendant T. J. Larson and thirteen others constitute an association known as the
1. SALE: implied Norway Draft Horse Company, and all
warranty:
pleading. the members, except N. P. Nelson, deceased are defendants, in this suit. In January, 1889, the association bought of the plaintiff a Norman stallion, called "Zephirin," for the agreed price of one thousand, five hundred dollars, and gave therefor three promissory notes for five hundred dollars, maturing, respectively, June 1, 1890, 1891 and 1892. This action is upon the first of the series of notes. There was a bill of sale of the horse in which the plaintiff is designated as party of the first part, and the Norway Draft Horse Company that of the second part, and the following are a part of the conditions:

"The parties of the first part assume no responsibility on account of disease or accident to said horse after leaving their stable, but agree that if, with proper treatment and handling, said horse proves barren, they will, at their option, refund the money paid for said horse, or furnish another horse in his place; provided said horse is returned as sound and in as good condition as when sold by said first parties. Said horse shall not be considered as fully tested until he shall have been kept by said second party two years from the beginning of the first season he makes after this date. This guaranty shall be binding on the party of the first part only on the express condition that the party of the second part strictly complies with all his covenants hereinafter made; and time is hereby expressly made the essence of this contract."

The answer, in the first division, admits the execution of the note and a liability thereon, "unless the defenses herein set forth shall prevail." In the second division is pleaded a failure of consideration for the note, based upon allegations that the horse was sold by the plaintiff and purchased by the defendants for breeding purposes, upon representations that he was a sure foal getter, healthy, and a first-class horse for breeding purposes; that in fact the horse was not sound, nor a sure foal getter, nor healthy, and was of no value for breeding purposes, nor of any value whatever, and that the horse, after the first season, sickened and died. The third division is a statement of facts showing fraud in the sale of the horse, and that the notes and bill of sale were obtained by fraud; and the other division is devoted to averments of special damage because of the fraudulent representations. A reply denies "each and every allegation of affirmative defense in each division of said answer and amendments contained, and expressly denies all fraud and misrepresentation." It will be seen that the issues of the case arise upon the answer and reply.

We have been thus full in our reference to the issues to indicate the relation to the case of the conditions quoted from the bill of sale, as much space is devoted in argument to the rights of the parties under an implied warranty and the effect of such conditions. We do not understand that the case involves any question as to a warranty. The defendant in no way pleaded a warranty, but only, as we have stated, a failure of consideration, and fraud. As to the plea of fraud, it is somewhat doubtful whether it was designed as defensive matter, and also by way of counterclaim, or only the latter. The defendants attach the bill of sale as an exhibit to the answer, but not as a basis for a right of recovery under its terms, but only as an instrument executed with the notes, and obtained by fraudulent representations, for the purpose of avoiding, rather than enforcing, its terms; that is, they seek to avoid the conditions of the bill of sale as well as the notes, because obtained by fraud. The reply puts in issue the facts pleaded. From the tenor of the instructions we are led to think the district court experienced a difficulty in its presentation of the issues, for in its statement of the "second defense" the conclusion is that, because of the facts pleaded, there has been damage in the sum of four hundred dollars because of "expense of keeping and advertising," and "that plaintiff has no right to recover on said note because of said fraud," etc., showing that the cause was submitted on the theory of the division of the answer containing both matter of counterclaim and defense. Added to this is a claim by the appellant that the failure of consideration "is pleaded in the second and third divisions of defendant's answer," and an argument is based on that theory. We think the plea of a failure of consideration is limited to the second division.

The appellant urges, in view of the fact that other notes are likely to be affected by the conclusion in this

case, that it is of the highest importance to all the parties to this suit that the issue or issues on which the verdict is sustained, if sustained at all, should be precisely stated. As the cause must be reversed, and stand for a new trial, we think the same considerations apply in view of this case, and that the issues should be precisely stated in the district court, and, if not done otherwise, it should be on the court's own motion. With the issues thus presented, we think many of the complaints now urged to the instructions might be avoided. It may be well to here state that some of the questions urged as to instructions and evidence should have been presented by way of objections to the pleadings, and there settled, for, if valid, they were apparent on the face of the pleadings, and involved the merits of the case.

II. The burden of the case was such that defendants' counsel had the opening and closing to the jury. After the first argument had proceeded some five or ten minutes, the defendants' counsel presented to the court certain questions to be presented to the jury.

2. SPECIAL verdict: interrogatories submitted after argument commenced: new trial.

The plaintiff objected, for the reason, among others, that they were not presented to the attorneys for the adverse party before the argument commenced. As there is a controversy as to the facts under which the questions were submitted, the following is quoted from the record: "The court: It is ordered, and made a part of the record in this case, that the special interrogatories submitted to the jury therein were not submitted to the counsel for the plaintiff until after the defendants had commenced their opening argument, and after the first counsel for defendants had spoken from five to ten minutes; that then the special interrogatories were presented to the counsel for the plaintiff, and they had the use of the same during their arguments to the jury, and that the

same were allowed to go to the jury by the court, against the exceptions of the plaintiff." After the questions were presented there was talk between counsel and the court, in which the court attempted to have the objections withdrawn, or to have counsel agree to the submission. There was also talk of their being submitted on the court's own motion, and the appellees, in argument, claim that they were finally so submitted, but the record does not support the claim.

It was error to submit the questions. The statute is specific, and is as follows: "In all actions, the jury, in their discretion, may render a general or special verdict; and in any case in which they render a general verdict, they may be required by the court, and must be so required on the request of any party to the action, to find specially upon any particular questions of fact to be stated to them in writing, which questions of fact shall be submitted to the attorneys of the adverse party before the argument to the jury is commenced." Code, section 2808. In *Hopper v. Moore*, 42 Iowa, 563, the questions were presented just before the closing argument, and refused, and the ruling was sustained. In *Crosby v. Hungerford*, 59 Iowa, 712, it is said: "The statute is imperative that such questions must be submitted to the attorneys of the adverse party before the argument is commenced." It is there said that a submission to the court before argument is not sufficient. The appellees cite *Petrie v. Boyle*, 56 Iowa, 163, in which the court, on its own motion, submitted interrogatories without submission to attorneys, and this court, not deciding the right of the court so to do, held that under the state of the record there was no prejudice. The case, however, guards the question we are considering in these words: "It is clear when interrogatories are propounded at the instance of one party, they must be submitted to the adverse party, before the argument is commenced." These authorities seem

conclusive of the question, and very manifestly reflect the legislative intent to fix a definite time in which the opposite counsel should have the questions. It is now settled that the court may on its own motion submit questions, without submission to attorneys, by which method any emergency for such questions might be met. See *Clark v. Ralls*, 71 Iowa, 189; *Briggs v. McEwen*, 77 Iowa, 303, 305.

Because of the condition of the record, we omit the consideration of some questions, thinking that with the issues properly defined they will not arise on another trial. For the error in submitting the interrogatories the judgment is REVERSED.