MARY L. WILSON, Administratrix, etc., Appellant, v. WA-
PELLO COUNTY, IOWA, Appellee.

County bridges: DEFECTS: LIABILITY FOR INJURIES: INSTRUCTION.
1  In an action for injuries alleged to have resulted from a de-
fective county bridge or the approach thereto, an instruction
that in case the accident occurred before the team entered
upon the approach to the bridge the plaintiff could not re-
cover, was correct, since a county is not charged with the duty
of keeping ordinary highways in repair and is not liable for
injuries resulting from defects therein.

Same. It is not error to refuse an instruction concerning a fact
2  not within the allegations of the pleadings, and where the evi-
dence relied upon in its support is wholly lacking in definite-
ness.

Challenge of jurors: INTEREST AS A TAXPAYER. A juror may be
3  challenged when he shows such a state of mind as will pre-
clude him from rendering a just verdict, but the mere fact
that a juror is a taxpayer of the county against which an action
is pending, will not necessarily disqualify him, and the court's
discretion in denying a challenge on that ground will not be
disturbed on appeal.

Submission of special interrogatories. Special interrogatories
4  should be submitted to counsel before argument to the jury is
commenced, but if presented immediately after counsel has
arisen and by formal phrase addressed the court and jury the
rule is satisfied and the denial of a motion to strike the same
is not erroneous.

*Appeal from Wapello District Court.*— HON. F. W. EICHEL-
BERGER, Judge.

MONDAY, NOVEMBER 20, 1905.

ACTION at law to recover damages growing out of the
death of W. M. Wilson, plaintiff's intestate, and which death
was occasioned, as alleged, by the negligence of the defend-
ant county in permitting a county bridge to remain in a de-
fective and dangerous condition.    Upon trial there was a

verdict and judgment in favor of defendant, and the plaintiff appeals.— *Affirmed.*

*A. C. Steck* and *Chester W. Whitmore,* for appellant.

*Seneca Cornell, W. H. C. Jaques,* and *W. W. Epps,* for appellees.

BISHOP, J.— I.    This action was commenced in January, 1903, and was reached for trial upon the issues joined in December, 1904.    As the jury was being impaneled, the
**3. CHALLENGE OF JURORS: interest as a taxpayer.** plaintiff challenged for cause each of the individual jurors called into the box who made answer that he was a property owner and taxpayer in the county.    The ground of challenge was that the juror was " incompetent because of showing such a state of mind as would preclude him from rendering a just verdict in said cause."    The several challenges were overruled, and, after exhausting her right of peremptory challenge, the plaintiff was compelled to go to trial before a jury made up of taxpayers of the county.    Out of this situation arises the error first complained of.    The statute enumerates the several grounds upon which a challenge for cause to an individual juror may be laid.    Among these, and it is the only one having any pertinency to the present inquiry, is the following: " When it appears the juror   .   .   .   shows such a state of mind as will preclude him from rendering a just verdict."    Code, section 3688, subd. 9.

It must be apparent that a challenge based upon such ground calls only for a conclusion upon a fact question, and of necessity such question is addressed to the sound discretion of the trial court.    And, as in other cases, where an exercise of discretion is under review, we may not interfere, except an abuse be made to appear.    *Anson v. Dwight,* 18 Iowa, 241; *Sprague v. Atlee,* 81 Iowa, 1; *Goldthorp v. Goldthorp,* 115 Iowa, 430.

Now, it may very well be considered that a personal pecuniary interest in the result of an action is of itself sufficient to justify a finding that a state of mind exists such as to preclude a just verdict. And without doubt every taxpayer within the limits of a municipal corporation is interested in a pecuniary sense in the result of an action brought against such corporation to recover damages as for a personal injury. He must contribute in the way of payment of taxes to liquidate any judgment that may be obtained. It is in line with this thought that we have uniformly held that in actions against a city or town for the recovery of money there was no abuse of discretion in sustaining a challenge for cause to a juror; the challenge being predicated wholly upon the fact that the juror was a taxpayer of the defendant city or town. Of such cases are these: *Davenport, etc., Co. v. Davenport,* 13 Iowa, 229; *Dively v. Cedar Falls,* 21 Iowa, 567; *Cramer v. Burlington,* 42 Iowa, 315; *Cason v. Ottumwa,* 102 Iowa, 99.

Some language is used in the opinion in the Cramer Case, and likewise in the Cason Case, upon which an argument might be based, to the effect that it would be reversible error to overrule a challenge made to a taxpayer called as a juror in such a case, but respecting such matter we need not make any pronouncement at this time. It is sufficient to remark in this connection that jurors are drawn from the county at large, and where a city, town, or other minor municipality is proceeded against no substantial injustice could result from a trial to a jury made up of nontaxpaying members of the panel. Moreover, no difficulty need be apprehended in such cases, as challenges on the ground of interest, if sustained, could not have the effect of blocking the machinery of the court, and thus make it impossible that a case be put upon trial. When, however, a county is proceeded against, the court is confronted with quite a different situation. While there is no requirement in the statute that one must be a taxpayer to be eligible as a juror, yet it is fair

to presume that each person drawn for jury service is the owner of some property, greater or less in amount or value, which is the subject of taxation. Indeed, we think it within common experience in this State that the appearance of a nontaxpaying juror furnishes a rare exception to the rule. And it is hardly conceivable that a panel should be drawn in any county presenting a sufficient number of nontaxpaying members to make it possible to make up a jury out of such for the trial of a case. It may be true enough that, after exhausting the regular panel, the drawing of talesmen might be resorted to and continued indefinitely until a sufficient number of jurors who could pass challenge should be found. Conceding the possibility of such a course, and to say nothing of the expense incident thereto, we should be very slow to condemn the discretionary action of a trial court in refusing to compel parties to submit their important matters of difference to a jury which might be eventually thus made up. And this conclusion is the more readily reached in view of the statute which gives a plaintiff who has brought an action triable to a jury against a county, in the court of that county, as he must, the unqualified right to have the place of trial changed to an adjoining county. Code, section 3505, subd. 1.

In some of the sister States it has been provided by statute that, in an action against a county, it shall be no ground of challenge that a juror called to the box is a taxpayer of the county. And such enactments are undoubtedly based upon the thought that the extent of the personal interest of an individual taxpayer is too slight to be permitted to outweigh, not only the necessity for a speedy disposition of cases thus brought, but the desirability of having every jury made up from the substantial citizenship of the county. In other States it has been held that, in the absence of a mandatory statute, the slight financial interest which flows from the obligation to pay taxes is not sufficient to disqualify a juror, where otherwise there would be a failure of justice.

*Com. v. Ryan,* 5 Mass. 90; *Com. v. Brown,* 147 Mass. 585 (18 N. E. Rep. 587, 1 L. R. A. 620, 9 Am. St. Rep. 736); *State v. Intoxicating Liquors,* 54 Me. 564; *Middletown v. Ames,* 7 Vt. 166; *Bassett v. Governor,* 11 Ga. 207.

II.   Error in connection with the submission to the jury of special interrogatories propounded by defendant is complained of.   The contention made is that such interrogatories were not submitted to counsel for plaintiff before the argument to the jury on behalf of plaintiff began, as required by Code, section 3727.   The abstract makes it appear that after counsel for plaintiff had arisen to his feet, and by formal phrase addressed the court and jury, he was interrupted by counsel for the defendant, who then made presentation of the proposed interrogatories. It is shown that the argument was thereupon postponed, and counsel for plaintiff filed a motion in writing to strike the interrogatories because not filed in time; also, subject to the motion, written objections to each of the several interrogatories.   The motion to strike was overruled, and the objections were sustained in part and overruled in part; whereupon the argument to the jury proceeded.   We think there was no error.   The object of the statute is to require that opposite counsel be advised of the requested interrogatories before proceeding to make his argument; and this to the end that he may make objections thereto if he shall be so advised, and, further, that he may shape his argument having reference thereto.   Here there was a substantial compliance with the statute, as we do not think it can be said that the argument had been commenced.   And it is certain that counsel for plaintiff had every benefit the statute was intended to confer.   In each of the cases cited in support of the contention for error it appears that the argument was fairly in progress before the interrogatories were presented.   *Humbert v. Larson,* 89 Iowa, 258; *Crosby v. Hungerford,* 59 Iowa, 712; *Hopper v. Moore,* 42 Iowa, 563.

4. Submission of special interrogatories.

III.   It is the allegation of the petition that the bridge

in question, or approach thereto, was negligently and defectively constructed, and was, and long had been, in a defective and dangerous condition in this: that the approach to said bridge consisted of a wooden apron and dirt filling of insufficient width and

1. COUNTY
   BRIDGES:
   defects:
   liability for
   injuries:
   instruction.

dangerous to the traveling public; that on either side of the approach was a deep and wide ditch; that the wooden apron on said approach was weak and rotten, and with holes therein; that no railing or barrier had been erected to protect the traveling public from being thrown therein or over the embankment into the ditch at the side thereof. The further allegation is that the deceased in traveling over the highway in a buggy drawn by two horses, " and at a point on said highway on the bridge or the approach thereto, the horses shied, and falling over the embankment of said bridge or approach thereto into a deep ditch or washout, precipitated the buggy, with the deceased therein, into the said ditch or washout," causing the injuries and death as now complained of.

The answer, among other things, denied that the accident occurred on the bridge in question or upon any approach thereto forming a part of said bridge. The record contains only what purports to be a brief synopsis of the evidence, and therefrom it appears that the plank approach at the north end of the bridge was about twelve feet in width, and from the bridge proper to the highway the distance was about nine feet. The approach was not provided with railing, and on each side thereof the ground descended, forming the continuation of a ditch which extended along the sides of the highway. It seems that by action of the water coming down the west ditch a portion of the highway embankment had been washed away, so that at the time of the accident such highway, from a point some distance north of the bridge down to where it united with the approach to the bridge, was a foot or so less in width than the approach itself. It was conceded that the wooden approach constituted part of the bridge, but

that the earthen roadway extending on to the north was not a part thereof.

It is recited in the abstract that there was evidence for plaintiff tending to show that as Wilson, the deceased, approached the bridge from the north, his horses were being driven at a walk, and that as the horses got partially upon the wooden approach one of them apparently became frightened at some object, and shied over against his mate on the west side, pushing him off the approach, and resulting in both horses, the vehicle, and its occupants being precipitated into the ditch. It is further recited that the evidence on behalf of defendant tended to show that the horses had not yet reached the wooden approach to the bridge when the accident took place, but were still traveling upon the roadway leading up to the bridge.

In the instructions given the court told the jury in substance that if they found as a fact in the case that the accident complained of occurred before the horses had entered upon the approach to the bridge, and while still traveling upon the common roadway, the plaintiff could not recover in the case. With the general verdict in favor of defendant, the jury returned an answer to a special interrogatroy propounded by plaintiff, finding that the horses were not upon the bridge approach at the time one of them shied or took fright. And in answer to interrogatories propounded by defendant the jury returned special findings to the effect that the horses and buggy went into the ditch north of and before reaching the approach to the bridge; further, that the accident was occasioned by reason of the roadbed north of the approach to the bridge having been gradually narrowed by the action of the elements. No question is made in respect of the conclusiveness of the fact findings as made by the jury. The contention for error centers upon the correctness of the instruction given as above referred to, and upon the refusal by the court to give other instructions having relation to the subject, and as requested by plaintiff.

The substance of the requests as thus made will be referred to in the further course of this opinion. It is the statute provision that the board of supervisors of each county shall have the power " to provide for the erection of all bridges . . . within their respective counties, and to keep the same in repair," etc. Code, section 422, subd. 18. And it is the doctrine of our cases that the power to build and repair bridges carries with it corresponding duties, so that the county may be held liable for damages resulting from negligence in building or failing to repair. Among the cases are these: *Wilson v. Jefferson Co.,* 13 Iowa, 181; *Moreland v. Mitchell Co.,* 40 Iowa, 394; *Cooper v. Mills Co.,* 69 Iowa, 350.

We need not step aside to consider what might be the effect in case a county should assume construction of, or direct control over, an ordinary roadway within its limits. It is sufficient to say that there is no provision of statute which enjoins upon the counties of the State the duty of keeping in repair ordinary roadways; that duty by statute devolves upon the township trustees. Code, section 1528 *et seq.* And there is no rule of decision recognizing any such duty on the part of a county or declaring for county liability in case of damage arising out of an alleged defective roadway condition. In all cases of this character liability must be predicated upon neglect of an imposed duty. It may be here remarked that, even in bridge cases, the rule in force in this State is opposed to the weight of common-law authority, and we have persistently refused to extend the operation of such rule beyond that class of cases which involve in all strictness a claim for damages arising out of defective bridge construction or want of repair amounting to negligence. *Kincaid v. Hardin Co.,* 53 Iowa, 430; *Green v. Harrison Co.,* 61 Iowa, 311; *Lindley v. Polk Co.,* 84 Iowa, 308; *Packard v. Voltz,* 94 Iowa, 277; *Lahner v. Inc. Town of Williams,* 112 Iowa, 428. See, also, *Miller v. Boone Co.,* 95 Iowa, 5.

The reasoning upon which the cases, those declaring for

a liability in bridge cases, as well as those in which liability of the county is limited to such cases, is made to rest, will be found more or less fully stated in the several opinions. The necessities of the instant case do not require that we enter upon any enlarged discussion.   Now, unless there be some controlling force in the contention of appellant, presently to be given consideration, an approval of the instruction complained of, as stating the law of the case, must follow; and, accepting the fact findings of the jury as conclusive, the general verdict should not be disturbed.

To avoid the effect of the conclusions thus expressed, counsel for appellant present the contention that " the question of liability does not turn on where the accident happened, but does turn on the question of what caused it."   In line with such theory, plaintiff requested the court to instruct the jury in substance that if the horse or horses in question, although not yet upon the approach to the bridge, took fright because of the want of railings at the ends of such approach, or because the approach was narrower than sixteen feet, as by law required, or because of a hole in one end of such approach occasioned by the shortness of one of the planks, and that these features were of a nature to frighten horses, and that the horse in question did take fright at some one or more of them, and in consequence shied, and the accident followed, the defendant would be liable, even though the horses had not entered upon the approach to the bridge.   The complete answer to the contention as thus made is that no such case was brought by the petition before the court for trial.   The defendant was not called to answer for the creation or maintenance of a nuisance.   Moreover, there is nothing in the evidence from which the jury might put their fingers upon the particular thing that caused the horse to shy.   It may have been one thing and it may have been another.   It may even have been a sudden freak not referable to any cause exterior to the animal itself.   Had the horses been on the apron or bridge, and

2. SAME.

had shied and gone off, either through a hole or because of the want of a railing, it may be that the particular cause of the fright would have been immaterial. But such is not involved in the question before us.

Other errors presented are either disposed of by what has already been said, or are not of sufficient importance to demand special attention.

We conclude that there was no error, and the judgment is *affirmed.*