Argued May 3, decided June 7, rehearing denied October 11, 1910.

### ELLIOTT v. WALLOWA COUNTY.

[109 Pac. 130.]

JURY—JURORS—QUALIFICATIONS—INTEREST.

1. A taxpayer is not a qualified juror in any case wherein the county is liable to pay the judgment.

VENUE—CHANGE—JUDICIAL POWER.

2. A circuit court can only change the venue of a cause on grounds specified by Section 45, B. & C. Comp.

JURY—CHALLENGES—WAIVER.

3. By failing to move for a change of venue under Section 45, B. & C. Comp., plaintiff in a suit against a county waived his right to challenge taxpayers of the county for implied bias under Section 122.

JURY—JURORS—CHALLENGE.

4. In a suit against a county, a challenge of a juror who is a taxpayer for implied bias will not be allowed where it will result in a failure of justice, as in cases where no change of venue can be had.

EVIDENCE—OPINIONS—DAMAGES.

5. On an issue of damages caused by the opening of a road, to qualify witnesses to testify to the amount of damages, they must show knowledge of facts beyond that which the jury would be able to derive from testimony as to physical facts; and hence an affidavit of an absent witness who testified that an owner would be damaged in a specified sum through the expense of building new fences, and inconvenience of passing from one part of his land to the other, and in carrying on farming and stock raising, is admissible, though it appears that witness owned land nearby and knew the quality of plaintiff's land, where it did not appear that he resided near the land or that he was a stockman or a farmer, or knew the market value of land in that vicinity, or was qualified in any way to judge of the inconveniences that would result to plaintiff beyond those specified in the affidavit.

From Wallowa: JOHN W. KNOWLES, Judge.

Statement by MR. JUSTICE MCBRIDE.

A petition was filed for a county road across the premises of plaintiff, and the viewers appointed by the county

court reported in favor of granting the road and assessed plaintiff's damages at $225. The court made a conditional order for the establishment of the road, part of which order is as follows:

"The court being satisfied that said assessment of damages is just and equitable the same is hereby approved and allowed, and the road is not of sufficient public importance to justify the county in paying said damages or any part thereof, therefore, it is hereby considered and ordered that the petitioners pay or cause to be paid in to the clerk of this court on or before the next regular term of this court the amount of the damages so assessed, as aforesaid, for the benefit of the parties whose lands will be rendered less valuable by reason of the location of said road, and that all of the records and files of this proceeding be submitted to the district attorney for examination and report, and that pending said report and the payment of the damages as assessed the final order herein allowing said petition be stayed, and this matter be and the same is hereby continued until the July term of court."

Plaintiff appealed from this assessment, and on trial in the circuit court the jury returned a verdict, finding, that plaintiff's lands would be made less valuable by the opening of the road in the sum of $350. The court rendered judgment against the county for such sum and costs and disbursements. On the trial in the court below, plaintiff challenged the first juror called, for the reason that he was a taxpayer of the county, but the challenge was overruled, the court remarking that it appeared from the order of the county court that the county would not be required to pay the damages in any event, as it had made an order requiring the petitioners to pay them, as a condition precedent to the opening of the road. The same objection was made to each juror, and overruled, and, plaintiff's pre-emptory challenges having been exhausted before the panel was filled, a jury was finally obtained over his objection. Plaintiff appeals.

AFFIRMED.

For appellant there was a brief over the names of *Messrs. Fee & Slater* and *Mr. Daniel W. Sheahan,* with oral arguments by *Mr. James A. Fee* and *Mr. Sheahan.*

For respondent there was a brief over the names of *Mr. Francis S. Ivanhoe,* District Attorney, and *Messrs. Burleigh & Boyd,* with oral arguments by *Mr. Ivanhoe* and *Mr. James A. Burleigh.*

MR. JUSTICE McBRIDE delivered the opinion of the court.

Among the causes of challenge for implied bias, enumerated in Section 122, B. & C. Comp., is the following: "Interest on the part of the juror in the event of the action, or the principal question involved therein." Under our statute the appeal from the assessment of damages is taken from the decision of the court upon the report of the viewers and not from the order establishing the road. Therefore the court, at any time after approving the report and fixing the assessment of damages, may order the road established, notwithstanding the appeal. In the case at bar the court on May 24, 1909, approved the report and assessment of damages, made an order requiring the petitioners to pay the same on or before the next regular term, as a condition precedent to a final order allowing the petition, directed that further proceedings be stayed pending such payment, and continued the matter until the following term, which was held in July, 1909. On the day succeeding this order, the plaintiff appealed to the circuit court from the assessment of damages, and on the 13th day of November, 1909, the cause was tried in that court.

1. In civil cases, we think it is the universal rule that a taxpayer is not a qualified juror in any case in which the county is liable to pay the judgment recovered. While the liability of the county to pay the judgment in this case is remote, and it is improbable that it may be required to pay anything except the $125 given in excess

of the amount allowed by the board of viewers, and not even that except in its discretion, yet, for the purposes of this opinion, we may concede, without deciding, that this was sufficient to disqualify taxpayers from sitting on the jury if the matter had been seasonably taken advantage of by a motion on the part of plaintiff for a change of venue.

2. Section 45, B. & C. Comp., provides that the court may change the place of trial, on motion of either party when it appears from the affidavit of such party that the judge or the inhabitants of such county are so prejudiced against the party making the motion that he cannot expect an impartial trial in the county. In *Multnomah County* v. *Willamette T. Co.*, 49 Or. 204 (89 Pac. 389) it was held that, under the foregoing section, a defendant, in an action by the county to recover damages, was entitled to a change of venue; and in *Ford* v. *Umatilla County*, 15 Or. 313 (16 Pac. 33), it was held that a taxpayer of the county could be successfully challenged by either party for implied bias.

3. In the case at bar, it would have been impossible for the county to have secured a change of venue. No affidavit could have been truthfully made showing bias or prejudice against the county, and the court could not have made the change in the absence of such affidavit, as there is no authority given a circuit court to change the venue of a case except for the causes specified in the statute. So, to have adopted the theory of the plaintiff on the trial of this case, would have allowed him to bring his appeal to the circuit court, and continue to challenge every juror that appeared in the box for implied bias, until he secured a jury to satisfy his own wishes, or, in other words, he could either have selected his own jury or prolonged the trial indefinitely.

4. We cannot accept a view of the law that leads to such absurd consequences. Had the county been in a

position to ask for the change of venue and neglected to avail itself of it, we would be inclined to hold that it had chosen to abide the consequences of allowing plaintiff to select his own jury, but where, as in this case, the plaintiff alone was in a position to move for a change, we hold that his failing to do so waived his right to challenge taxpayers of the county for implied bias arising from that relation. And so it has been held, and in our judgment correctly, that a challenge for implied bias would not be allowed in cases of the character of the one at bar, if the application of the rule would result in a failure of justice, as in cases where no change of venue could be had. 24 Cyc. 272; *Bassett* v. *Governor,* 11 Ga. 207; *Commonwealth* v. *Ryan,* 5 Mass. 90; *Wilson* v. *Wapello County,* 129 Iowa, 77 (105 N. W. 363: 6 Am. & Eng. Ann. Cas. 958); *Board of Commissioners of Fountain County* v. *Loeb,* 68 Ind. 29; *Board of Commissioners of Orange County* v. *Hon,* 87 Ind. 356. In *Board of Commissioners of Fountain County* v. *Loeb,* 68 Ind. 29, the court held that the defendant, by refusing to change the venue and objecting to taxpayers as jurors, had thereby waived the right of trial by jury. But in the subsequent case of *Board of Commissioners of Orange Co.* v. *Hon,* 87 Ind. 356, this method of disposing of the difficulty was disapproved in a case where the county insisted on trial by jury, and the defendant, without asking for a change of venue, insisted on his right to challenge every taxpayer called; the court saying: "If either right could properly have been denied, it would seem more reasonable to have been the right of challenge with the exercise of which the demand for a jury was inconsistent." None of the cases cited by counsel conflict with these views. In *Garrison* v. *City of Portland,* 2 Or. 123, and in *City of Portland* v. *Kamm,* 5 Or. 362, the objection was to jurors who were taxpayers within the city of Portland, and, as jurors who were not such taxpayers could easily have

been obtained in that portion of the county outside of
the municipality, there could be no failure of justice by
requiring this to be done. In *Ford* v. *Umatilla County,*
15 Or. 313 (16 Pac. 33), plaintiff moved for a change
of venue and it was refused. Of course, under the cir-
cumstances, he could not be held to have waived any-
thing. In the case of *Bassett* v. *Governor,* 11 Ga. 207,
the court say:

"This cause can be tried nowhere but in the county of
Bibb, where all the defendants reside, and, if not tried
there, it cannot be tried at all. If citizens of Bibb are
incompetent to try it, then it follows that the adminis-
tration of the law utterly fails, and the state cannot com-
pel the collector to pay over the public money in his
hands. * * Our judgment is that in cases against tax
collectors, where the interest of the jury is remote, slight
and uncertain, and when their exclusion would defeat
altogether the enforcement of the law against them, that
the citizens of the county are not disqualified, as jurors,
because of that interest."

In *Wilson* v. *Wapello County,* 129 Iowa 77 (105 N. W.
363), the court, after saying that in cases against muni-
cipal corporations it had always held that taxpayers of
such corporations were ineligible as jurors, continues:

"It is sufficient to remark in this connection that jurors
are drawn from the county at large, and where a city,
town, or other minor municipality is proceeded against,
no substantial injustice could result from a trial to a
jury made up of nontaxpaying members of the panel.
Moreover, no such difficulty need be apprehended in such
cases, as challenges on the ground of interest, if sus-
tained, could not have the effect of blocking the machin-
ery of the court, and thus make it impossible that a case
be put upon trial. When, however, a county is pro-
ceeded against, the court is confronted with quite a dif-
ferent situation. While there is no requirement in the stat-
ute that one must be a taxpayer to be eligible as a juror,
yet it is fair to presume that each person drawn for jury
service is the owner of some property, greater or less

in amount of value, which is the subject of taxation. Indeed, we think it within common experience in this state that the appearance of a nontaxpaying juror furnishes a rare exception to the rule. And it is hardly conceivable that a panel should be drawn in any county presenting a sufficient number of nontaxpaying members to make it possible to make up a jury out of such for the trial of a case. It may be true enough that, after exhausting the regular panel, the drawing of talesmen might be resorted to and continued indefinitely until a sufficient number of jurors who could pass challenge should be found. Conceding the possibility of such a course, and to say nothing of the expense incident thereto, we should be very slow to condemn the discretionary action of a trial court in refusing to compel parties to submit their important matters of difference to a jury which might be eventually thus made up. And this conclusion is the more readily reached in view of the statute which gives a plaintiff who has brought an action triable to a jury against a county, in a court of that county, as he must, the unqualified right to have the place of trial changed to an adjoining county."

5. The next assignment of error relates to the admission of the testimony of the absent witness Wade. It was admitted that Wade, if present, would testify that he owned a large tract of land, about 700 acres in extent, adjoining plaintiff's land, and had been such owner for several years; that he was familiar with the kind and quality of plaintiff's land, knew how much the establishment of the proposed road would affect the same, and knew from experience that the cost of construction of the fences necessary for plaintiff to build in order to protect his land and crops thereon along both sides of the proposed road would not be less than $200; that the cost of maintaining and keeping in repair such fences would not be less than $15 each year, after the same were constructed; that the proposed road would cut plaintiff's land into two tracts, and the inconvenience of passing back and forth across the road, with animals, vehicles,

and implements, in carrying on farming and stock-raising operations, would cause the land to depreciate in value, as a whole, to the extent of not less than $500; that the whole damage which would be caused by the opening and establishment of the road, including the value of the land taken, the effect of the taking on the remainder, the cost of construction of necessary fences, and other inconveniences and burdens it would impose, would amount to not less than $1,000. The court considered this showing sufficient to have the trial postponed, but the defendant obviated this by stipulating that the witness would, if present, testify as above stated, subject to objection as to its admissibility. On objection by defendant, the court refused to present that portion of the affidavit, hereafter quoted, to be read to the jury:

"And that the whole damage that will be caused by the opening and establishment of said proposed road, including the value of the land taken, the effect of the taking upon the remainder, the cost of construction and maintenance of necessary fences, and other inconveniences and burdens it will impose, will amount to not less than $1,000."

The affidavit was admitted so far as it related to the expense of construction of new fences, the inconvenience of passing from one part of the tract to the other, and carrying on farming and stock-raising operations. We think this error, as far as it was admissible under the authorities. It has been held in this state that a witness will not be allowed to state upon a question of general damages the amount of such damages; that is, he will be confined to the testimony as to conditions, leaving the jury to estimate amounts: *Burton* v. *Severance*, 22 Or. 91 (29 Pac. 200); *U. S.* v. *McCann*, 40 Or. 13 (66 Pac. 274). But this court seems to have held, in cases of this character, that a witness, otherwise competent, may testify directly as to the amount of damages: *Blagen* v.

*Thompson,* 23 Or. 239 (31 Pac. 647: 18 L. R. A. 315). But, where this is permitted, the witnesses, while not technically experts, must show knowledge of the facts beyond that which the jury would be able to derive from testimony as to physical facts. If a witness is called upon to testify as to value, he must show some special or actual knowledge as to value, and so with any other special subject upon which he is required to impart special information to a jury. It was shown that the witness had land in the vicinity of plaintiff, and knew the kind and quality of plaintiff's land. It was not shown that he resided near plaintiff or that he was a stockman or farmer, or knew the market value of land in that vicinity, or, in any way, was qualified to judge of the inconveniences that plaintiff would be subjected to, beyond those specified in that part of the affidavit admitted in evidence. Had the witness appeared personally in court and attempted to testify, concerning the matters excluded by the court's ruling, he would have been required to show other qualifications than those disclosed in the affidavit, or his testimony would have been rejected. His estimates of special and general damage, which were admitted, approximated $700; while the verdict of the jury was for $350, and it is very improbable that an estimate of further damages for "inconveniences and burdens" not specified, would have increased the amount. It is clear that, before he could have testified as to them, he would have been required to state what those inconveniences and burdens consisted of, so that the court could determine whether they contained the elements going to make up a legal claim for damages.

The judgment of the circuit court is affirmed.

AFFIRMED.